UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF101 WEST LOMBARD STREET
STEPHANIE A. GALLAGHERBALTIMORE, MARYLAND 21201
UNITED STATES MAGISTRATE JUDGE(410) 962-7780
Fax (410) 962-1812

December 4, 2015

LETTER TO COUNSEL

  RE:   Merletha McKisset, et al. v. Brentwood BWI One, LLC, et al.
        Civil Case No. WDQ-14-1159

Dear Counsel:

I have reviewed Defendant Brentwood BWI One, LLC's ("Brentwood") Motion to Compel Plaintiff Merletha McKisset's ("Ms. McKisset") attendance at her independent medical examination ("IME") with Dr. David Schretlen on December 9, 2015. *See* [ECF No. 73]. Brentwood's motion seeks the Court's order that the IME occur without Ms. McKisset's three requested restrictions, which are as follows: (1) that she be provided notice regarding the battery of tests to be administered at her IME; (2) that a court reporter be present at her IME; and (3) that her expert physician(s) be present at the IME. *Id.* I have also reviewed Ms. McKisset's Opposition to Brentwood's Motion, and Brentwood's Reply thereto. *See* [ECF Nos. 76, 77]. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth herein, Brentwood's Motion is GRANTED.

**I. Background**

On behalf of a class of others similarly situated, Ms. McKisset brought suit against Brentwood, among other defendants, for injuries she allegedly sustained as a result of her exposure to dangerous levels of carbon monoxide at the Westin Hotel at Baltimore-Washington International Airport in February 2014. *See* Pls.' Am. Compl. ¶¶ 5, 38. The injuries Ms. McKisset alleges include "neurological injuries . . . which are permanent in nature." *Id.* at ¶ 38. Ms. McKisset was evaluated by her own expert neuropsychologist, Dr. Gloria Morote, Ph.D., on June 6, 2015, and also submitted a "Carbon Monoxide Independent Medical Evaluation Report" by Dr. Lindell K. Weaver. Def.'s Mot. to Compel 2. Both Dr. Morote and Dr. Weaver opined that Ms. McKisset had significant impairments and brain injuries as a result of her exposure to carbon monoxide. *Id.*

Ms. McKisset is to be subject to an IME by the Defendants' proposed expert neuropsychologist, Dr. David J. Schretlen, Ph.D., at the Johns Hopkins University School of Medicine on December 9, 2015. *See* Def.'s Mot. to Compel 3. On September 16, 2015, counsel for Brentwood advised counsel for Ms. McKisset by email that the IME with Dr. Schretlen was to occur on December 9, 2015. *Id.* Ms. McKisset's counsel did not object either to the selection of Dr. Schretlen or to the proposed December 9th date. *Id.* Despite counsel for Brentwood's

attempts to confirm the December 9th IME by three emails to Ms. McKisset's counsel, which were sent on October 13, November 2, and November 11, 2015, Ms. McKisset's counsel failed to raise any of the issues now in dispute until November 11, 2015.  Def.'s Mot. 3; *id.* at Ex. A.  On that date, Ms. McKisset requested that six conditions or restrictions be placed on her December 9th IME with Dr. Schretlen.  *See* Def.'s Mot. to Compel Ex. A.  At their Local Rule 104.7-mandated meet-and-confer, the parties resolved three of the six disputed issues.  *Id.*  Still pending are the disputes over Ms. McKisset's three remaining requests.

## II. Discovery Disputes

### A. Ms. McKisset's Requested Notice Regarding the Battery of Tests to be Administered by Dr. Schretlen

Ms. McKisset requests that she be provided notice of the specific tests to be administered at the IME with Dr. Schretlen.  *See* Pl.'s Opp. 3.  Federal Rule of Civil Procedure 35, which governs compulsory medical examinations in civil proceedings, permits the Court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1).  Rule 35 also states that the order "may be made only on motion for good cause . . . and must specify the time, place, manner, conditions, and scope of the examination."  Fed. R. Civ. P. 35(a)(2).  Here, neither Ms. McKisset nor Brentwood disputes that Brentwood has good cause to order Ms. McKisset's IME.  *See* Def.'s Mot. 5; Pl.'s Opp. 2. Rather, the parties differ on the scope of Federal Rule 35's notice requirement.

While the Fourth Circuit has not addressed the issue, the majority of courts considering the adequacy of the scope of an IME's notice "defer to the expertise of the examiner and permit 'routine' examinations" without requiring that the examiner specify the exact tests to occur. *Ren v. Phoenix Satellite Television (US), Inc.*, 309 F.R.D. 34, 37 (D.D.C. 2015).  *See also Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 196, 202 (N.D. Tex. 1995).  *But see Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388, 398-99 (S.D. Tex. 2013) ("Although some courts find it appropriate to generically order "routine procedures" be performed . . . this Court feels it more appropriate to order Defendant to submit to Plaintiff a list of those potential tests that will comprise the universe of tests that the examining physicians intend to conduct.") (internal quotation marks omitted).  Moreover, importantly, courts considering whether a more detailed explanation of the tests to be administered is required in advance of a plaintiff's Rule 35 examination have generally considered this issue in the context of physical, rather than mental, examinations.  *See, e.g.*, *Calderon v. Reederej Claus-Peter Offen GmBH & Co.*, 258 F.R.D. 523, 529 (S.D. Fla. 2009).

Here, Dr. Schretlen's declaration states that Ms. McKisset's IME will consist of an "approximately one-hour interview with Plaintiff regarding the carbon monoxide incident and the symptoms she has experienced since the incident, including any treatment; approximately two hours of neuropsychological testing administered by a licensed psychometrist in the morning; a one-hour lunch break; approximately two hours of neuropsychological testing

administered by a licensed psychometrist in the afternoon; and approximately one-and-a-half-hour interview of the Plaintiff after testing regarding her psychiatric, social, educational, and family history." Def.'s Mot. Ex. E.  Ms. McKisset contends that Dr. Schretlen "provides only conclusory information as what [sic] the tests are intended to evaluate," and that he "does not provide any substantive information about the actual proposed testing."  Pl.'s Opp. 3.  Ms. McKisset also notes that the additional information she requests "need not be so specific as to be a catalogue of every possible diagnostic test Dr. Schretlen intends to use, but it should educate the Plaintiffs and the court as to the sort of examination Dr. Schretlen intends to conduct."  *Id.* (quoting *Ren*, 309 F.R.D. at 37).  Neither assertion is persuasive.

Contrary to Ms. McKisset's statement, Dr. Schretlen's explanation of the testing that will occur indeed informs both Ms. McKisset and the Court about "the sort of examination Dr. Schretlen intends to conduct."  In fact, short of cataloguing every possible diagnostic test Dr. Schretlen intends to run, which Ms. McKisset explicitly advocates against, Dr. Schretlen's statement gives a very clear picture as to his intentions for the IME.  *See Ren*, 309 F.R.D. at 37 ("*Ornelas* appears to be relatively unique in requiring a catalogue of tests the mental examiner might possibly conduct; the majority of cases defer to the expertise of the examiner and permit "routine" examinations.").  He expressly identifies the approximate length of time that each test will require, and further identifies the testing or interviewing activities that will occur in each time period.

While Dr. Schretlen did not identify the full battery of tests the psychometrists will perform, such detail is not necessary.  Only when an examining expert's advance description is so bare as to give insufficient indication of what the plaintiff is to expect will courts order that additional detail be provided.  Dr. Schretlen's explanation of the schedule for the IME goes well beyond those explanations that courts have deemed unsatisfactory.  *See Ren*, 309 F.R.D. at 38 (finding that a psychiatrist's statement that he would 'conduct an interview of each subject [plaintiff] and . . . administer only those tests that are necessary' was not sufficient, and concluding that "Plaintiffs' counsel and the court are entitled to a better sense of how [the doctor] intends to conduct his examination.").  *Contra Abdulwali*, 193 F.R.D. at 15 (denying a request by the plaintiff to limit the scope of examination because the proposed examination was "within the customary bounds of a psychiatric examination, as described by the examining expert . . . [to] consist of review of all relevant records and documents; gathering of past history including medical history; assessment of present illness to include inquiry into feelings and relationships; formal mental status examination; and formulation of a diagnosis.").  Because Dr. Schretlen has provided an adequately detailed summary of the testing, I find that it is unnecessary to order additional descriptions of the IME in advance of December 9th.

**B. Ms. McKisset's Requests that Her Medical Expert and a Court Reporter Be Present at the IME**

Ms. McKisset additionally seeks the presence of a court reporter and one of her expert physicians at her IME.  *See* Pl.'s Opp. 3-5.  Because Federal Rule 35 does not specify which parties may attend a compulsory medical examination, the issue is left to the Court's discretion.

*Dziwanoski v. Ocean Carriers Corp.*, 26 F.R.D. 595 (D. Md. 1960). While courts are divided on the issue of third party presence during a Rule 35 examination, this Court, and the majority of federal courts, have held that a party seeking to have an observer present bears the burden of showing good cause for the request under Rule 26(c), as "the presence of a third party is not typically necessary or proper." *Tarte v. United States*, 249 F.R.D. 856, 859 (S. D. Fla. 2008). *See, e.g.*, *Abdulwali v. Washington Metro Area Transit Authority*, 193 F.R.D. 10, 13 (D.D.C. 2000) ("While federal courts which have considered this issue are divided, the greater weight of authority favors the exclusion of a Plaintiff's attorney from the conduct of a Rule 35 examination.") (quoting *Tomlin v. Holecek*, 150 F.R.D. 628, 631 (D. Minn. 1993)); *Tomlin*, 150 F.R.D. at 631 (finding that Plaintiff was not entitled to have counsel present during her mandatory psychological examination); *Cline v. Firestone Tire & Rubber Co.*, 118 F.R.D. 588 (S.D. W. Va. 1988) (holding same); *Brandenburg v. El Al Airlines*, 79 F.R.D. 543 (S.D.N.Y. 1978); *Dziwanoski*, 26 F.R.D. at 598 ("The presence of the lawyer for the party to be examined . . . should be permitted only on application to the court showing good reason therefor"); *Tomlinson v. Landers*, No. 307-CV-1180J-TEM, 2009 WL 2496531, at *1 (M.D. Fla. Aug. 12, 2009) (The majority of federal courts have held that the presence of a third party or recording device "subvert[s] the purpose of Rule 35, which is to put both the plaintiff and defendant on an equal footing with regard to evaluating the plaintiff's [medical] status."); *Dillon v. Auto-Owners Ins. Co.*, No. 14-CV-00246-LTB-MJW, 2014 WL 4976315, at *3 (D. Colo. Oct. 6, 2014) (finding same); *Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388 (S.D. Tex. 2013). ("[T]he party seeking the presence of a third party at a Rule 35 examination still sustains the burden of convincing the court that . . . a third-party presence is necessary.").

Moreover, courts that have permitted recordings to occur or observers to be present during Rule 35 examinations have based their holdings on particular facts of each case present in those cases. *See, e.g.*, *Tracey P. v. Sarasota Cty.*, No. 8:05-CV-927-T-28EAJ, 2006 WL 1678908, at *4 (M.D. Fla. June 16, 2006) (permitting a court reporter to be present at Plaintiffs' IMEs where plaintiffs were individuals recovering from mental illness and substance abuse); *Doe v. D.C.*, No. Civ. A. 03-1789-GKJMF, 2005 WL 3828731, at *1 (D.D.C. Aug. 15, 2005) (finding good cause to require Plaintiff's IME to be videotaped where plaintiff was a ten-year-old boy who had allegedly experienced sexual abuse, and where other examinations in the case had been videotaped); *Bennett v. White Labs, Inc.*, 841 F. Supp. 1155, 1159 (M.D. Fla. 1993) ("[Plaintiff's] legitimate concerns regarding discomfort and pain may be further alleviated by having her physician present, if she wishes."). No court has held that an examinee has an absolute right to have an observer present during an examination. *See Abdulwali*, 193 F.R.D. at 13 ("In the instances in which the presence of a third party has been allowed, "[e]ach of these rulings has been grounded in the particular facts of the case. None has found an absolute right to have an attorney present during a psychiatric examination.") (quoting *Tirado v. Erosa*, 158 F.R.D. 294, 295 (S.D.N.Y. 1994)); *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12 (E.D.N.Y. 1989) (permitting a plaintiff to have a court reporter at his medical examination where the plaintiff was "not well-educated and, more importantly, ha[d] difficulty with the English language").

Here, Ms. McKisset correctly notes that some federal courts who permit the presence of

*McKisset v. Brentwood BWI One, LLC*
Civil Case No. WDQ-14-1159
December 4, 2015
Page 5

third parties or audio recordings during an IME reason that a third party may be present because "it is somewhat artificial and unrealistic to describe [a Rule 35] exam as independent," and that, consequently, the Rule 35 examination is "inextricably intertwined with the adversarial process." Pl.'s Opp. 4 (quoting *Davanzo v. Carnival Cruise Lines, et al.*, No. 1:14-CV-20153-JAL, 2014 WL 1385729, at *4-5 (S.D. Fla. Jan. 14, 2014) and citing *Goggins v. State Farm Mut. Auto Ins. Co.*, No. 3:10-CV-00826-JBT, 2011 WL 1660609, at *3 (M.D. Fla. May 3, 2011)); *see also Gensbauer v. May Dep't. Stores Co.*, 184 F.R.D. 552, 553 (E.D. Pa. 1999). However, Ms. McKisset misunderstands both the weight of and the reasoning behind these findings.

The presence of a third party during an IME is the exception to the majority rule; the courts in these cases generally admit that their holdings run contrary to the rule itself. *See Davanzo*, 2014 WL 1385729, at *3 ("The 'majority view' in the federal district courts is to exclude third-parties and recording equipment from Rule 35 examinations.") (citing *Holland v. United States*, 182 F.R.D. 492, 495 (D.S.C. 1998)). This Court has followed the majority rule, and, what is more, has noted the importance of maintaining the majority rule to carry out the Federal Rules' intention that the character of the IME not be adversarial. *See McKitis v. Defazio*, 187 F.R.D. 225, 228 (D. Md. 1999) ("While I acknowledge that there is authority to support the plaintiff's request [that his counsel be present at his IME] . . . I find that, absent a compelling determination of need—which is not present in this case—a party's counsel should not be permitted to attend a Rule 35 examination.") (citing *Dziwanoski*, 26 F.R.D. at 597) ("The very presence of a lawyer for one side will inject a partisan note into what should otherwise be a wholly objective inquiry."); *Feinman v. Cunningham*, No. Civ. A. DKC-08-3376, 2009 WL 2499717, at *1 (D. Md. Aug. 12, 2009) (upholding the magistrate judge's application of the majority rule and consequent finding that Plaintiff was not entitled to have her physician observe her IME); *Machie v. Manger*, Civ. A. No. AW-09-2196, 2012 WL 3656501, at *3 (D. Md. Aug. 23, 2012) ("[I]f the Court permits counsel to observe the examination . . . the examination could become more adversarial").

Further, Ms. McKisset fails to acknowledge that the holdings in the exceptional cases that she cites were largely grounded in each federal court, sitting in diversity, finding that the laws of their respective states expressly permitted or required the presence of third parties at Rule 35 exams. In *Davanzo,* the court noted "well-established Florida law" granting plaintiffs "the right to have a third party at [their] medical examination[s]." 2014 WL 1385729, at *3. In *Gensbauer*, the court granted the plaintiff the right to have a third party present because Pennsylvania Rule of Civil Procedure 4010(4)(i) mandated that a plaintiff "shall have the right to have counsel or other representative present during the [Rule 35] examination." 184 F.R.D. at 553. *See also id.* ("In a diversity case such as this one, where the federal rule is silent on the issue of attorney presence, I look to Pennsylvania state rules for guidance."); *Goggins*, 2011 WL 1660609, at *2 ("[T]he Court can look to state law for guidance . . . Under Florida law, 'the burden of proof to show why the examinee's entitlement to the presence of a third party should be denied . . . lies with the party opposing the third party's attendance.'") (quoting *Toucet v. Big Bend Moving & Storage, Inc.*, 581 So. 2d 952, 953 (Fla. Dist. Ct. App. 1991)).

In the instant case, this Court, too, sits in diversity. *See* Def.'s Notice of Removal ¶¶ 8, 9. Unlike in *Goggins*, *Davanzo*, and *Gensbauer*, however, there is no provision addressing third party presence at a Rule 35 examination in the Maryland Rules of Civil Procedure or in Maryland common law. Since the Maryland Rules are silent on the issue, this Court cannot look to the state laws for guidance. I find the majority rule, and the fact that this Court has followed the majority rule in the past, to be persuasive. The burden therefore lies with Ms. McKisset to show good cause for the presence of her medical expert(s) and a court reporter. Ms. McKisset has failed to meet her burden.

Ms. McKisset's Opposition reveals no special circumstances which would warrant an exception to the majority rule. Dr. Schretlen has not indicated that his exam will involve dangerous, inventive, or potentially harmful techniques. Ms. McKisset has given no concrete proof of Dr. Schretlen's partiality, other than that he has been hired by Brentwood to perform the examination. *See Duncan v. Upjohn Co.*, 155 F.R.D. 23, 27 (D. Conn. 1994) (denying the plaintiff's request for his expert physician to be present during his IME because the defendant "d[id] not propose to use unorthodox or potentially harmful techniques"); *Galieti v. State Farm Mut. Auto Ins. Co.*, 154 F.R.D. 262, 265 (D. Colo. 1994) ("Plaintiff has presented nothing that indicates that [Defendants' doctors] will be less than impartial, other than that they have been hired by Defendants."). In fact, the presence of a third party physician is likely only to impede the examination. *See Shirsat v. Mutual Pharmaceutical Co.*, 169 F.R.D. 68 (E.D. Pa. 1996) (denying Plaintiff's request for an observer during Plaintiff's mental examination, finding that "an observer, court reporter, or recording device, would constitute a distraction during the examination and work to diminish the accuracy of the process," and finding that "the need for effective psychiatric examinations militates against allowing an observer who could potentially distract the examining psychiatrist and examinee"). As she has provided no good cause for doing so, Ms. McKisset is not permitted to select and bring the physician of her choosing to the psychological exam with Dr. Schretlen on December 9th.

Likewise, Ms. McKisset is not permitted to bring a court reporter or recording device to her examination. The majority rule cautions not only against the presence of counsel or a plaintiff's medical experts at his or her IME, but also against the presence of court reporters or recording devices. *See Calderon*, 258 F.R.D. at 529; *Lerer v. Ferno-Washington, Inc.*, No. 06-81031, 2007 WL 3513189, at *1 (S.D. Fla. Nov. 14, 2007) ("Most courts analyze a request for a recording device the same way they evaluate whether to permit the presence of an attorney at a Rule 35 . . . examination.") (quoting *Favale v. Roman Catholic Diocese of Bridgeport,* 235 F.R.D. 553, 557 (D. Conn. 2006)); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 628 (D. Kan. 1999) ("Whether to allow a tape recorder or a third person at the examination of [the] plaintiff raises only a single issue."); *Holland*, 182 F.R.D. at 495 (holding same). The rule's reasoning is grounded in the notion that "the presence of a third party or recording device "subvert[s] the purpose of Rule 35, which is to put both the plaintiff and defendant on an equal footing with regard to evaluating the plaintiff's [medical] status." *See Favale*, 235 F.R.D. at 557 (internal quotation marks omitted). As the Middle District of Florida explained in *Tomlinson*, "because plaintiffs are able to be examined by their physicians in the absence of defense counsel, plaintiffs should not be permitted to record the Rule 35 examination unless they can show special

conditions are present which call for a protective order tailored to the specific problems presented." 2009 WL 2496351, at *1 (citing *Bethel v. Dixie Homecrafters, Inc.,* 192 F.R.D. 320, 324 (N.D. Ga. 2000) (internal quotation marks omitted)).

Ms. McKisset has not shown the requisite good cause to warrant a recording of her IME with Dr. Schretlen.  Ms. McKisset's arguments that the IME will "effectively" operate as a deposition because of Dr. Schretlen's planned interview, and that a recording is necessary to resolve any potential "disputes" over what was said at the IME, do not rise to the level of good cause.  As Brentwood notes in its Reply, Ms. McKisset was examined by her own experts without a court recording device.  Def.'s Repl. 1.  Her bald assertion that a court reporter or recording device is necessary to prevent bias is unsupported by any concrete evidence of prejudice in her Opposition.  Further, as courts have noted, Rule 35, and the adversary process, "provide other safeguards" for plaintiffs to challenge aspects of Rule 35 examinations.  *Tarte*, 249 F.R.D. at 859.  *See McKitis*, 187 F.R.D. at 227-28 ("Any concerns plaintiff has about the opinions expressed by [the IME psychiatrist] . . . adequately can be addressed in a pretrial motion in limine . . . Moreover, if [the psychiatrist] is permitted to testify at trial, the plaintiff is still free to cross-examine him about matters reflecting bias or prejudice."); *Barrett v. Great Hawaiian Cruises, Inc.*, 1997 WL 862762 (D. Ha. 1997) (noting that plaintiffs receive post-exam Rule 35 examination reports and have the subsequent opportunity to depose the physician, cross-examine him, or introduce contrary expert evidence); *Cline*, 118 F.R.D. at 589 (same).

Given that Ms. McKisset was examined by her own experts without a court recording device, and has not demonstrated good cause for recording Dr. Schretlen's exam, it is evident that to fulfill the purpose of Rule 35 and "put the parties on equal footing," a court reporter or recording of the IME is not appropriate or necessary here.  Therefore, Ms. McKisset is not permitted to record the IME on December 9th.

## IV. Conclusion

For the reasons discussed above, Brentwood's Motion to Compel, [ECF No. 73], is GRANTED.  Ms. McKisset is ordered to appear at her scheduled IME with Dr. David Schretlen on December 9, 2015.  Despite the informal nature of this letter, it will be flagged as an Opinion and docketed as an Order.

                              Sincerely yours,

                              /s/

                              Stephanie A. Gallagher
                              United States Magistrate Judge